```
 1                 UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF FLORIDA
 2                   CASE NO. 24-CR-20456-JB

 3
      UNITED STATES OF AMERICA,            Miami, Florida
 4
                                           May 5, 2025
 5          vs.
                                           9:20 a.m. - 11:05 a.m.
 6
      ALFRED DAVIS,                         Volume 1 of 1
 7
                   Defendant.              Pages 1 to 60
 8    _____

 9                 TRANSCRIPT OF CHANGE OF PLEA
              BEFORE THE HONORABLE JACQUELINE BECERRA
10                 UNITED STATES DISTRICT JUDGE

11    APPEARANCES:

12
      FOR THE GOVERNMENT:          JONATHAN BAILYN
13                                 ASSISTANT UNITED STATES ATTORNEY
                                   99 Northeast 4th Street
14                                 Miami, Florida 33132

15    FOR THE DEFENDANT:           BRIAN ANDREW KIRLEW
                                   The Kirlew Law Firm PLLC
16                                 2103 Coral Way
                                   Suite 401
17                                 Miami, Florida 33145

18
      ALSO PRESENT:  Nashid Sabir
19

20
      STENOGRAPHICALLY REPORTED BY:
21
      VERNITA ALLEN-WILLIAMS, RPR, RMR, FCRR
22    Official Court Reporter to:
      The Honorable Jacqueline Becerra
23    United States District Court
      Southern District of Florida
24    400 North Miami Avenue
      Miami, Florida 33128
25    Vernita_Allen-Williams@flsd.uscourts.gov
```

| | |
|---|---|
| 09:15AM | 1 |
| 09:20AM | 2 |
| 09:21AM | 3 |
| 09:21AM | 4 |
| 09:21AM | 5 |
| 09:21AM | 6 |
| 09:21AM | 7 |
| 09:21AM | 8 |
| 09:21AM | 9 |
| 09:21AM | 10 |
| 09:21AM | 11 |
| 09:21AM | 12 |
| 09:21AM | 13 |
| 09:21AM | 14 |
| 09:21AM | 15 |
| 09:21AM | 16 |
| 09:21AM | 17 |
| 09:21AM | 18 |
| 09:21AM | 19 |
| 09:21AM | 20 |
| 09:21AM | 21 |
| 09:21AM | 22 |
| 09:22AM | 23 |
| 09:22AM | 24 |
| 09:22AM | 25 |

1    (Call to order of the Court at 9:20 a.m.)

2    THE COURTROOM:  We're here on United States v. Davis,

3  Case No. 24-CR-20456.

4    MR. BAILYN:  Good morning, Your Honor.  Assistant U.S.

5  Attorney Jonathan Bailyn on behalf of the United States.  I'm

6  joined by Special Agent Adam Weisenstine of the FBI.

7    THE COURT:  Good morning.

8    MR. KIRLEW:  Good morning, Your Honor.  Brian Kirlew on

9  behalf of Alfred Davis.

10    THE COURT:  Good morning.  Is the government ready to

11  proceed?

12    MR. BAILYN:  We are, Your Honor.

13    THE COURT:  All right.  Mr. Davis last night -- not last

14  night.  I'm sorry.  About 5:40 this morning another counsel came

15  in to file a motion making an appearance, a motion for a

16  continuance, and a motion to dismiss the indictment.

17    Mr. Kirlew, you're the counsel of record.  What say you?

18    MR. KIRLEW:  Judge, what I say is I am not adopting any

19  of those motions.

20    However, I can tell you with conversations this morning

21  that we may be close to a resolution.  So if the Court would be

22  gracious enough to allow me and Mr. Davis and this new counsel a

23  little bit more time in the attorney room, we may be able to enter

24  a change of plea.

25    THE COURT:  All right.  So let me just say a couple

09:22AM 1   things for the record and see where we're at, okay.  Is the other

09:22AM 2   lawyer here?

09:22AM 3        MR. KIRLEW:  He is, Your Honor.

09:22AM 4        THE COURT:  All right.  So, sir, I don't know what

09:22AM 5   experience you have in criminal federal court in Miami, but

09:22AM 6   entering an appearance on the morning of trial is, obviously,

09:22AM 7   disfavored.

09:22AM 8        Sir, you're entitled to a lawyer of your choosing, of

09:22AM 9   course.  This is now your third lawyer that you're trying to get

09:22AM 10  on the morning of trial, and it makes it very difficult.  I have

09:22AM 11  50 jurors waiting outside and, as you know, because you were here,

09:22AM 12  I think, at the calendar call, we're ready for trial today.

09:22AM 13       If this new lawyer -- if you can't get a resolution,

09:22AM 14  you're under no obligation to plead, obviously.  If you want a

09:22AM 15  trial, you will get a trial.  If you want the new lawyer to sit

09:22AM 16  with Mr. Kirlew, I can do that.  I'm not inclined to let him in,

09:23AM 17  dismiss Mr. Kirlew, and continue the trial date because we're

09:23AM 18  ready for trial.  The government's ready for trial.

09:23AM 19       Okay.  Do you understand that?

09:23AM 20       THE DEFENDANT:  Yes.

09:23AM 21       THE COURT:  So if you want to keep chatting for a

09:23AM 22  resolution, how much time do you think you need?

09:23AM 23       MR. KIRLEW:  Can we get until 9:45, Judge?

09:23AM 24       THE COURT:  Sure, I will give you until 9:45.  Like I

09:23AM 25  said, my issue is a jury that I have waiting outside.  Are they

09:23AM   1    all outside ready?

09:23AM   2         THE COURTROOM DEPUTY:  They're coming in.  I'm having

09:23AM   3    them go to the restroom and whatnot and then I will line them up.

09:23AM   4         THE COURT:  Go ahead and use one of our rooms till 9:45;

09:23AM   5    and then if not, I need to pick a jury.

09:23AM   6         MR. KIRLEW:  Understood.

09:23AM   7         THE COURT:  Okay.

09:23AM   8         THE COURTROOM DEPUTY:  Judge, do you want to instruct

09:23AM   9    them not to have contact with the jurors outside?

09:24AM  10         MR. BAILYN:  Also, Your Honor, can I say one thing?  This

09:24AM  11    happened at the last trial.

09:24AM  12         THE COURTROOM DEPUTY:  Wait one moment.

09:24AM  13         MR. BAILYN:  I'm so sorry.  I apologize.

09:24AM  14         THE COURT:  I don't think there is anything the

09:24AM  15    government needs to say right now.  There's motions that have been

09:24AM  16    filed.  I have already said what I expect to do with those

09:24AM  17    motions.

09:24AM  18         If there is not a resolution, then I'm going to hear what

09:24AM  19    the government's position is on the motions and we will go

09:24AM  20    forward.

09:24AM  21         MR. BAILYN:  Your Honor, it has nothing to do the

09:24AM  22    motions; and I didn't mean to interrupt.  I'm so sorry.

09:24AM  23         There's people in the audience that are wearing political

09:24AM  24    slogans; Blacks for Trump t-shirts, Donald Trump sweatshirts.

09:24AM  25    This happened in the last trial.  Judge Martinez found it to be

09:24AM 1     inappropriate.  I think it is.

09:24AM 2             That's all I wanted to raise to the Court's attention.

09:24AM 3             THE COURT:  Well, I don't know who these folks are.  I

09:24AM 4     can't see from here -- maybe I should have better glasses -- what

09:24AM 5     they're wearing.  I don't see how that's an issue or how that's at

09:24AM 6     all relevant.

09:24AM 7             Donna pointed out we do have jurors outside; so if

09:24AM 8     there's friends or family of the defendant or the defendant, just

09:24AM 9     stay in these rooms because I've got a whole group of jurors out

09:25AM 10    there who don't even know what they can or can't do yet; so if you

09:25AM 11    would just stay in the attorney's rooms, I would appreciate that.

09:25AM 12            MR. BAILYN:  Sorry, Your Honor.  Thank you.

09:25AM 13            (Recess at 9:25 a.m.)

09:47AM 14            THE COURT:  All right.  You may be seated.  Mr. Kirlew,

09:47AM 15    where are we?

09:47AM 16            MR. KIRLEW:  Judge, good morning again.  Brian Kirlew on

09:47AM 17    behalf of Alfred Davis.  I want to thank the Court for giving us

09:47AM 18    this time.

09:47AM 19            At this time, Your Honor, we're going to be entering a

09:47AM 20    change of plea to the indictment.

09:47AM 21            THE COURT:  All right.  So this is what we're going to

09:47AM 22    do; we're going to go and change the plea.  There is a plea

09:47AM 23    colloquy you have to do, but we will go ahead and do that, sir.

09:47AM 24            MR. KIRLEW:  Can we do it seated, Judge, or do you want

09:47AM 25    him standing?

09:47AM   1        THE COURT:  Oh, he can be seated.  And I will just start

09:47AM   2   by saying what I tell all defendants when we do pleas, I am not in

09:47AM   3   a hurry.  I probably should be because I have plenty of pending

09:47AM   4   cases.  We're going to take as long a time as we need to make sure

09:47AM   5   that you're comfortable with a change of plea and that you answer

09:47AM   6   all the questions that I have for you with respect to the change

09:47AM   7   of plea.  Okay?

09:47AM   8        THE DEFENDANT:  Uh-huh.

09:47AM   9        THE COURT:  The first question I have before we proceed

09:48AM  10   on to the change of plea, with respect to any victims of the

09:48AM  11   offense, government, I assume there is no plea agreement.

09:48AM  12        Is this just a plea to the indictment?

09:48AM  13        MR. BAILYN:  That's correct, Your Honor.

09:48AM  14        THE COURT:  So the reason I ask that question is that

09:48AM  15   typically if there are victims to the offense.

09:48AM  16        Here there could be a financial institution, correct?

09:48AM  17        MR. BAILYN:  Yes, there are.

09:48AM  18        THE COURT:  So if the government is giving somebody a

09:48AM  19   plea deal, usually the victim is given some notice of what that

09:48AM  20   deal is.  There is no deal here, right; you're just pleading

09:48AM  21   straight up to the indictment.

09:48AM  22        But at the time of sentencing, they will get notice that

09:48AM  23   you've pled guilty; and if there are victims to the offense, I'll

09:48AM  24   hear from them.  That doesn't mean I am going to do anything they

09:48AM  25   ask me to do, but they can be heard at the time of sentencing.  So

09:48AM  1    that's why I ask that question, okay?

09:48AM  2              THE DEFENDANT:  Uh-huh.

09:48AM  3              THE COURT:  So, Donna, it looks like the defendant is

09:48AM  4    going to take a change of plea.  If you will have the jury just go

09:48AM  5    back to the jury room and wait there.

09:48AM  6              THE COURTROOM DEPUTY:  Okay.  Thank you, Judge.

09:48AM  7              THE COURT:  And then I will let them know when the plea

09:49AM  8    is done.

09:49AM  9              Okay.  I am going to ask you to stand up.  I do need you

09:49AM  10   to take the oath.

09:49AM  11             (The defendant is sworn.)

09:49AM  12             THE DEFENDANT:  I do.

09:49AM  13             THE COURT:  Okay.  You may be seated, sir.

09:49AM  14             There is a reason that I put you under oath.  The reason

09:49AM  15   I put you under oath is I have to ask you all sorts of questions

09:49AM  16   before I accept a different plea, okay.  The law requires that I

09:49AM  17   ask you these questions; it's part of the rules.  All right.

09:49AM  18             But if you give me a false answer, you could be

09:49AM  19   subjecting yourself to another penalty for making a false

09:49AM  20   statement or for perjury; do you understand that?

09:49AM  21             THE DEFENDANT:  Yes.

09:49AM  22             THE COURT:  Now, when this case started, when you first

09:49AM  23   made your initial appearance, you made your initial appearance,

09:49AM  24   they presented the indictment, you entered an appearance, right,

09:49AM  25   at the arraignment; it's either a plea of not guilty or a plea of

09:49AM  1   guilty.  Your lawyer at the time entered a not guilty plea.

09:50AM  2        You may not even remember that because that hearing, I

09:50AM  3   think, takes less than a minute, right.  It's really short; you

09:50AM  4   plead not guilty, your lawyer asks for the discovery, asks for a

09:50AM  5   jury trial, right, it's very short, and enters your plea.

09:50AM  6        When you want to plead guilty though, it's not that easy.

09:50AM  7   So you can't just come in and say "Judge, I plead guilty."  It

09:50AM  8   doesn't work that way.  I have to ask you all these questions

09:50AM  9   first; we have to have the change of plea hearing.

09:50AM  10       And then at the end of that hearing, all right, when I've

09:50AM  11  asked you all the questions, then I'm going to ask you how do you

09:50AM  12  plead; guilty.  Okay.  If at that moment you change your mind,

09:50AM  13  then you change your mind.  We will call the jury and the jury is

09:50AM  14  just waiting in the room.  Not a big deal, okay, and we will

09:50AM  15  start.

09:50AM  16       But I have to go through the entire hearing first, and

09:50AM  17  then it is after the hearing that you can tell me what your plea

09:50AM  18  is; do you understand that?

09:50AM  19            THE DEFENDANT:  Yes, Your Honor.

09:50AM  20            THE COURT:  Now, the questions I am going to ask you are

09:50AM  21  as follows.  They're general questions.

09:50AM  22       I have to ask you, for example, first I have to make sure

09:50AM  23  that you're mentally competent to proceed.  I have no reason to

09:51AM  24  think you're not, okay.  But I ask every defendant the same

09:51AM  25  questions, right, because I have to make sure that you're mentally

09:51AM 1   competent.  I have to make a finding for the record.  Why is that

09:51AM 2   important?  Because when you plead guilty as opposed to going to

09:51AM 3   trial, you waive rights; so I have to make sure that you're

09:51AM 4   competent to waive rights.

09:51AM 5        I have to make sure that you know what the consequences

09:51AM 6   of your plea are.  I have to make sure that you know what the

09:51AM 7   maximum penalties are.  That doesn't mean I'm going to sentence

09:51AM 8   you to the maximum penalties, but you have to know what the

09:51AM 9   maximum penalties are.  I have to make sure there is a factual

09:51AM 10  predicate for the case because unless there is a factual

09:51AM 11  predicate, you can't plead guilty to something you didn't do; so I

09:51AM 12  have to hear from the government as to what the factual predicate

09:51AM 13  is.  And then you're going to have to agree with what the

09:51AM 14  government says; and if you don't agree, then you will tell me "I

09:51AM 15  didn't agree with that," right, and then I will have to see

09:51AM 16  whether or not what you had agreed to is sufficient because,

09:51AM 17  again, you can't plead guilty to something when there are not

09:51AM 18  sufficient facts for the jury to have found you guilty beyond a

09:51AM 19  reasonable doubt.

09:52AM 20       So that's the sequence or just the general topics of what

09:52AM 21  I'm going to talk to you about.  I am talking about the rights

09:52AM 22  that you waive.  We will go through all of that, okay?

09:52AM 23            THE DEFENDANT:  Yes.

09:52AM 24            THE COURT:  As I mentioned to you before, I am not in a

09:52AM 25  hurry.  And why do I say that?  If before you give me an answer to

09:52AM   1   something you need to talk to your lawyer -- and I know the other

09:52AM   2   lawyer that wanted to enter an appearance is still here, he is

09:52AM   3   sitting behind you -- I will give you time to talk to your

09:52AM   4   lawyers.  So if before you answer a question you're not sure how

09:52AM   5   to answer it and you need a minute, tell me you need a minute, and

09:52AM   6   I'll give you whatever time you need.  Okay?

09:52AM   7           THE DEFENDANT:  Okay.

09:52AM   8           THE COURT:  The only thing I'm going to ask is that you

09:52AM   9   not sort of be whispering to your lawyer while I'm talking because

09:52AM   10  then you, obviously, can't really be listening to me, and you

09:52AM   11  can't really be listening to him; so you're half listening to

09:52AM   12  what's going on, which is not what I want to you do.

09:52AM   13          So if you need time, will you let me know?

09:52AM   14          THE DEFENDANT:  Yes, Your Honor.

09:52AM   15          THE COURT:  Also, the questions I'm about to ask you,

09:52AM   16  they're not trick questions, right.  I have them in this book

09:52AM   17  here.  Every judge pretty much asks more or less the same

09:53AM   18  questions.

09:53AM   19          I might ask them in a way that you don't understand.

09:53AM   20  Maybe I'm using too many legal terms, you know.  I don't want you

09:53AM   21  to feel bad about that.  If you don't understand the question,

09:53AM   22  that's on me; that's not on you.  All right.  Don't feel

09:53AM   23  embarrassed, just say "Judge, I don't understand what you're

09:53AM   24  asking me," and I will explain it to you again or I'll let you

09:53AM   25  talk to your lawyer.  Okay.

| | |
|---|---|
| 09:53AM | 1 |

```
09:53AM   1              THE DEFENDANT:  Yes.
09:53AM   2              THE COURT:  So if you don't understand a question, will
09:53AM   3    you let me know?
09:53AM   4              THE DEFENDANT:  Yes.
09:53AM   5              THE COURT:  All right.  Can you state your full name for
09:53AM   6    the record.
09:53AM   7              THE DEFENDANT:  Alfred Lenoris Davis.
09:53AM   8              THE COURT:  Have you ever been known by another name or
09:53AM   9    an alias?
09:53AM  10              THE DEFENDANT:  Al.
09:53AM  11              THE COURT:  How old are you?
09:53AM  12              THE DEFENDANT:  51.
09:53AM  13              THE COURT:  Where were you born?
09:53AM  14              THE DEFENDANT:  Miami, Florida.
09:53AM  15              THE COURT:  How far did go in school?
09:53AM  16              THE DEFENDANT:  Graduated high school.
09:53AM  17              THE COURT:  Can you read and write?
09:53AM  18              THE DEFENDANT:  Yes, I can.
09:53AM  19              THE COURT:  Have you ever been treated for a mental
09:53AM  20    illness or an addiction of any kind?
09:53AM  21              THE DEFENDANT:  No.
09:53AM  22              THE COURT:  Are you currently under the care or treatment
09:53AM  23    of any physician, psychologist, or psychiatrist?
09:54AM  24              THE DEFENDANT:  No.
09:54AM  25              THE COURT:  Do you believe that you have either a
```

09:54AM    1   physical condition or a mental condition that would make it
09:54AM    2   difficult for you to understand what's happening today?
09:54AM    3          THE DEFENDANT:  No.
09:54AM    4          THE COURT:  Have you taken any kind of medication in the
09:54AM    5   last 48 hours, including even, like, over-the-counter medication?
09:54AM    6          THE DEFENDANT:  No.
09:54AM    7          THE COURT:  Any kind of narcotic?  Anything that would
09:54AM    8   affect your ability to understand what we're doing?
09:54AM    9          THE DEFENDANT:  No.
09:54AM   10          THE COURT:  Do you feel like you're thinking clearly this
09:54AM   11   morning and that you understand what's happening?
09:54AM   12          THE DEFENDANT:  Yes.
09:54AM   13          THE COURT:  Mr. Kirlew, is there any reason why you think
09:54AM   14   the defendant isn't competent to proceed?
09:54AM   15          MR. KIRLEW:  No, Your Honor.
09:54AM   16          THE COURT:  Does the government have any information with
09:54AM   17   respect to competency?
09:54AM   18          MR. BAILYN:  No, Your Honor.
09:54AM   19          THE COURT:  Based on my observations of the defendant and
09:54AM   20   his responses to my questions, of course, I find that he is
09:54AM   21   clearly alert and he is competent to proceed.
09:54AM   22          All right.  I have to ask you a number of questions about
09:54AM   23   your lawyer, all right, because I want to make sure that you are
09:54AM   24   satisfied with the representation that you've received.
09:55AM   25          He is the second lawyer on the case.  I know you wanted a

| | |
|---|---|
| 09:55AM | 1 |
| 09:55AM | 2 |
| 09:55AM | 3 |
| 09:55AM | 4 |

09:55AM   1   third lawyer to come in, so it's important, right, that I know and

09:55AM   2   that I find that you're comfortable, right, and that you are

09:55AM   3   satisfied rather with the representation that Mr. Kirlew has given

09:55AM   4   you.

09:55AM   5        So the first question I have for you is in this case

09:55AM   6   there was an indictment.  Did Mr. Kirlew -- and I know he was the

09:55AM   7   second lawyer, right, first you had another lawyer -- but did he

09:55AM   8   sit down with you and review the charges in that indictment?

09:55AM   9        THE DEFENDANT:  Yes.

09:55AM   10        THE COURT:  Have you seen and read the indictment?

09:55AM   11        THE DEFENDANT:  Yes.

09:55AM   12        THE COURT:  He has an obligation to have spoken to you

09:55AM   13   about all of the charges, talked to you about the case in general,

09:55AM   14   what the charges are, what the penalties are; you know, if you're

09:55AM   15   found guilty, whether it's by plea or trial, to have reviewed the

09:55AM   16   penalties and reviewed the charges, reviewed what the government's

09:56AM   17   evidence has to be in this kind of case; did he do that?

09:56AM   18        THE DEFENDANT:  Yes.

09:56AM   19        THE COURT:  Now, even when you plead guilty -- and I know

09:56AM   20   that this is a decision for you, at least from the court record

09:56AM   21   perspective -- seems to be recent.  But even if you had wanted to

09:56AM   22   plead the first day you met him, he still has an obligation to

09:56AM   23   show you what the government's evidence is and to have reviewed

09:56AM   24   the government's evidence.

09:56AM   25        Did he sit down with you and review -- we call it the

09:56AM 1    discovery.  It's just the evidence that the government's required

09:56AM 2    to give him.  Did he sit down and review that evidence with you?

09:56AM 3              THE DEFENDANT:  Yes.

09:56AM 4              THE COURT:  Mr. Kirlew, did you sit with him and review

09:56AM 5    all the discovery you've received from the United States?

09:56AM 6              MR. KIRLEW:  Yes, Your Honor, and all the trial exhibits

09:56AM 7    as well.

09:56AM 8              THE COURT:  Because we already had trial exhibits; so did

09:56AM 9    you look at all those trial exhibits?

09:56AM 10             THE DEFENDANT:  Yes.

09:56AM 11             THE COURT:  All right.  The government in this case

09:56AM 12   because we're so ready to go to trial, they actually had a witness

09:57AM 13   list, too.  Did you look at the government's witness list as well?

09:57AM 14             THE DEFENDANT:  I didn't see the witness list.

09:57AM 15             THE COURT:  Okay.  But you saw the exhibits?

09:57AM 16             THE DEFENDANT:  Yes, I saw them.

09:57AM 17             THE COURT:  Okay.

09:57AM 18             MR. KIRLEW:  Your Honor, just to be clear, I didn't tell

09:57AM 19   him exactly who the witnesses are but I told him from what

09:57AM 20   agencies and what they would be testifying to; so there would be a

09:57AM 21   person from the IRS that would testify, there would be different

09:57AM 22   individuals that would authenticate or explain certain exhibits

09:57AM 23   that were in the trial binder.

09:57AM 24             THE COURT:  Which in this case is what's important

09:57AM 25   because it doesn't matter if it's IRS agent A or B; it's an IRS

09:57AM   1    agent that's going to say X, right.  Different cases, that might
09:57AM   2    be a different situation, right.  Because if it were a case, for
09:57AM   3    example, where an eyewitness would be important, then you would
09:57AM   4    want to know which witnesses are available.  It's not that kind of
09:57AM   5    case, okay, so you looked at the exhibits.
09:57AM   6            Did he review with you and discuss with you possible
09:58AM   7    defenses; how you were going to defend this case at trial?  Did
09:58AM   8    you have those conversations with him?
09:58AM   9            THE DEFENDANT:  Yes.
09:58AM   10           THE COURT:  Are there any questions that you had for him
09:58AM   11   about the case that he was not able to answer for you?
09:58AM   12           THE DEFENDANT:  No.
09:58AM   13           THE COURT:  Was there anything that you asked him to do
09:58AM   14   in this case that he didn't do for you?
09:58AM   15           THE DEFENDANT:  No.
09:58AM   16           THE COURT:  All right.  Look, this is a public hearing.
09:58AM   17   People are welcome to watch the proceedings.
09:58AM   18           If you're all going to talk, I'm going to ask that you
09:58AM   19   not do that because you're mumbling or saying things that I can
09:58AM   20   hear it up here and it's distracting; so I will ask people in the
09:58AM   21   gallery to please remain silent as we proceed with the plea
09:58AM   22   hearing.
09:58AM   23           Have you had any issues communicating with him?
09:58AM   24           THE DEFENDANT:  No.
09:58AM   25           THE COURT:  Is there anything about his representation of

16

09:59AM   1   you that you are concerned with?

09:59AM   2             THE DEFENDANT:  No.

09:59AM   3             THE COURT:  Have you been satisfied with the

09:59AM   4   representation he gave you?

09:59AM   5             THE DEFENDANT:  Yes.

09:59AM   6             THE COURT:  All right.  Now again, this morning I had a

09:59AM   7   motion by another lawyer that wanted to come in.  I don't want to

09:59AM   8   interfere in terms of asking you for attorney-client

09:59AM   9   communication; I just want to make sure that you are comfortable

09:59AM   10  with Mr. Kirlew, that you don't have any issues with Mr. Kirlew,

09:59AM   11  and that you've been satisfied with the representation he's given

09:59AM   12  you to date.

09:59AM   13            THE DEFENDANT:  Yes.

09:59AM   14            THE COURT:  Have you been satisfied?

09:59AM   15            THE DEFENDANT:  Yes.

09:59AM   16            THE COURT:  All right.  Let's go through the maximum

09:59AM   17  penalties, all right.

09:59AM   18            So in federal court the way the sentencings work is a

09:59AM   19  little different than maybe in some other courts or in state

09:59AM   20  court.  When you plead guilty in federal court, you plead guilty

10:00AM   21  without knowing what your sentence is going to be, right.  So it's

10:00AM   22  not like you plead to a ten-year or a five-year or a two-year.

10:00AM   23  That's not the way it works, okay.  It doesn't work like that in

10:00AM   24  any courtroom, at least in this district, and I don't think it

10:00AM   25  works like that anyplace, and that's because federal sentencings

10:00AM  1    function in a different way than maybe you might have heard or

10:00AM  2    sometimes people just get a notion of things from watching TV or

10:00AM  3    something like that, that's not how it works in the federal

10:00AM  4    system.

10:00AM  5            So I am the judge that's going to sentence you.  I don't

10:00AM  6    know how I'm going to sentence you.  And it's not like I'm

10:00AM  7    tricking you, it's not like I have some idea that I don't want to

10:00AM  8    tell you.  I don't know how I'm going to sentence you because the

10:00AM  9    way that sentencings work is this:  If you plead guilty, after you

10:00AM  10   plead guilty the probation office is going to prepare a report for

10:00AM  11   me.  That report is going to tell me everything from, like, where

10:00AM  12   you went to elementary school, literally, to what your involvement

10:00AM  13   was in this case and everything in between, all right.  It's to

10:01AM  14   give me information so that I can make the best decision I can.

10:01AM  15           They also give me their recommendation on how the Federal

10:01AM  16   Sentencing Guidelines apply to your case.  And the Federal

10:01AM  17   Sentencing Guidelines is like a point system, and it will give me

10:01AM  18   the recommended months of incarceration, if any, that are

10:01AM  19   recommended given the crime at issue.  But all of that is

10:01AM  20   advisory; none of that is mandatory.  So I can sentence you below

10:01AM  21   that range, right.  I'll make the final decision as to how you're

10:01AM  22   sentenced.

10:01AM  23           But obviously I can't have any idea now of what I'm going

10:01AM  24   to sentence you to because I don't have any of that information in

10:01AM  25   front of me, right; so that's why it is that you plead guilty and

10:01AM 1   you don't know what your sentence is going to be; but I am

10:01AM 2   obligated to tell you what the maximum penalties are.  And again,

10:01AM 3   that doesn't mean that I am going to sentence you to the maximum

10:01AM 4   penalty; but if I were to, you could appeal me, right; but you

10:01AM 5   can't withdraw your plea and then demand a trial, so you need to

10:01AM 6   understand what the maximum penalties for each count is; so I want

10:02AM 7   to go through that with you now.

10:02AM 8          So the government in this case charged you with three

10:02AM 9   counts of wire fraud; three counts of wire fraud.  The maximum is

10:02AM 10  20 years imprisonment for each count, followed by three years of

10:02AM 11  supervised release.  The maximum fine is $250,000.  There is also

10:02AM 12  forfeiture and restitution that are applicable under the statute.

10:02AM 13         Forfeiture is when I order you to give the government

10:02AM 14  back some money as part of the penalty as part of the case;

10:02AM 15  restitution is when you give back money to the victim of the case,

10:02AM 16  okay.  That's just what the statute allows for.  Do you understand

10:02AM 17  that those are the maximum penalties for each of the wire fraud

10:02AM 18  counts?

10:02AM 19         THE DEFENDANT:  No.  Can you explain that to me, Your

10:03AM 20  Honor?

10:03AM 21         THE COURT:  Right.  So for wire fraud the maximum count

10:03AM 22  is 20 years imprisonment.  Do you understand that that's the

10:03AM 23  maximum imprisonment charge for each of the wire fraud counts?

10:03AM 24         THE DEFENDANT:  Yes.

10:03AM 25         THE COURT:  I will break them up because I did say a lot

10:03AM  1   there.

10:03AM  2          The other thing is supervised release.  What is

10:03AM  3   supervised release?  If you plead guilty or are found guilty by a

10:03AM  4   jury, right, and you get a term of incarceration, after a term of

10:03AM  5   incarceration, we call it supervised release.  You know, it's like

10:03AM  6   being on probation; except probation is when you don't have any

10:03AM  7   incarceration; you go straight to probation.

10:03AM  8          If you have a period of incarceration, you serve that

10:03AM  9   time, but then you go to supervised release.  It's essentially

10:03AM  10  probation but after a period of incarceration.  I can only give

10:03AM  11  you three years of that.  I can't give you more.  I can give you

10:03AM  12  less, but I can give you up to three.  Do you understand that?

10:03AM  13          THE DEFENDANT:  Yes.

10:03AM  14          THE COURT:  And what happens with supervised release or

10:03AM  15  probation is if you violate your conditions of probation or you

10:04AM  16  violate your conditions of supervised release, you could be

10:04AM  17  sentenced to a term of imprisonment.  So let's say you get

10:04AM  18  probation in this case.  You violate probation, I can still send

10:04AM  19  you to prison.

10:04AM  20          Let's say that I sentence you to a term of prison.

10:04AM  21  You're done with prison, but then you have your supervised

10:04AM  22  release.  You violate supervised release, I can send you back to

10:04AM  23  prison.  Do you understand that?

10:04AM  24          THE DEFENDANT:  Yes.

10:04AM  25          THE COURT:  Then the fine, it's a maximum fine of

10:04AM 1    $250,000.  There's three counts, so I could do it for each count,

10:04AM 2    okay.  Both the prison term, the supervised release term, the

10:04AM 3    fine, I have to make finding that you can afford to pay the fine,

10:04AM 4    right.  Sometimes I make the finding if you can't pay a fine, you

10:04AM 5    can't pay a fine, right.  You don't get fined when you can't pay

10:04AM 6    something; but the law allows me to fine you up to $250,000.  Do

10:04AM 7    you understand that?

10:04AM 8         THE DEFENDANT:  Yes.

10:04AM 9         THE COURT:  So that's for Counts 1, 2, and 3.

10:05AM 10        For Count 4 and 5, those are different counts, right.

10:05AM 11   Count 4 and 5 is engaging in transactions in criminally derived

10:05AM 12   property, all right.

10:05AM 13        That's a different statute.  So for those two counts, the

10:05AM 14   maximum term of imprisonment is ten years.  The supervised release

10:05AM 15   is also three years, and the fine is the same; it's $250,000.

10:05AM 16        Do you understand those are the maximum penalties for

10:05AM 17   Counts 4 and 5?

10:05AM 18        THE DEFENDANT:  Yes.

10:05AM 19        THE COURT:  There is also forfeiture and restitution that

10:05AM 20   I could also order as to Counts 4 and 5.  Do you understand that?

10:05AM 21        THE DEFENDANT:  Yes.

10:05AM 22        THE COURT:  Now, the one thing I can guarantee you -- and

10:05AM 23   it's not going to seem like much, but this I have to tell you

10:05AM 24   because I can guarantee you because the law makes me do this --

10:05AM 25   which is a hundred dollars for each count.  So at the time of

| | |
|---|---|
| 10:05AM | 1 |
| 10:06AM | 2 |
| 10:06AM | 3 |
| 10:06AM | 4 |
| 10:06AM | 5 |
| 10:06AM | 6 |
| 10:06AM | 7 |
| 10:06AM | 8 |
| 10:06AM | 9 |
| 10:06AM | 10 |
| 10:06AM | 11 |
| 10:06AM | 12 |
| 10:07AM | 13 |
| 10:07AM | 14 |
| 10:07AM | 15 |
| 10:07AM | 16 |
| 10:07AM | 17 |
| 10:07AM | 18 |
| 10:07AM | 19 |
| 10:07AM | 20 |
| 10:07AM | 21 |
| 10:08AM | 22 |
| 10:08AM | 23 |
| 10:08AM | 24 |
| 10:08AM | 25 |

1 sentencing the only thing I can guarantee you in terms of your
2 penalties is that you will have a $500 assessment as part of your
3 sentencing.  Do you understand that?
4         THE DEFENDANT:  Yes.
5         MR. KIRLEW:  Your Honor, if I may just for one second.  I
6 am showing him the indictment because I think he was a little
7 confused on the counts, so I'm showing it to him here in writing
8 so he can see it.
9         For Counts 1 through 3, which is the wire fraud, this is
10 what she was referring to.  And this is Counts 4 through 5.  Do
11 you understand it?
12         (Brief pause to confer with the defendant.)
13         MR. KIRLEW:  All right.  Just to be clear, I could show
14 him the indictment so he could see the counts to make sure that he
15 understood that that's what you were referring to.
16         THE COURT:  Sure.  Do you need additional time to look at
17 that, sir?
18         THE DEFENDANT:  Yes, please.
19         THE COURT:  Sure.  Take the time you need if you want to
20 review the indictment again.
21         (Brief pause to review the indictment.)
22         MR. KIRLEW:  We're ready, Your Honor.
23         THE COURT:  Do you need any more time to go through the
24 indictment or to talk to your lawyer about it?
25         THE DEFENDANT:  No.  We just went through it, Your Honor.

10:08AM 1    THE COURT:  Look, sometimes when you have a plea deal,

10:08AM 2  the government might dismiss a count or something like that.

10:08AM 3    But in this case since there is no deal, you're pleading

10:09AM 4  to each count.  Do you understand that?

10:09AM 5    THE DEFENDANT:  Yes.

10:09AM 6    THE COURT:  A couple little other things to review with

10:09AM 7  you.

10:09AM 8    One, there is no parole board anymore in the federal

10:09AM 9  system.  I will tell you when I first became a judge, I was like

10:09AM 10  "Why do people even talk about parole any more?"  And then

10:09AM 11  literally, like, two weeks later there was some story in the news

10:09AM 12  about somebody asking for parole.  And there is a famous case now

10:09AM 13  in California, the Menendez brothers, that's on the news all the

10:09AM 14  time now; whether the parole board was going to recommend this or

10:09AM 15  that.  We don't have parole in the federal system anymore; so I'll

10:09AM 16  sentence you.  You don't like my sentence, you appeal me to the

10:09AM 17  Eleventh Circuit, all right.  That's how that works.

10:09AM 18    If you get a period of incarceration and there is an

10:09AM 19  issue with the Bureau of Prisons, there are certain things you can

10:09AM 20  take up with the Bureau of Prisons; but otherwise, you know, you

10:09AM 21  have the courts, okay.  There is no parole board.  There is no

10:09AM 22  other entity out there anymore that reviews or reduces sentences

10:09AM 23  or anything like that.  Do you understand that?

10:10AM 24    THE DEFENDANT:  Yes.

10:10AM 25    THE COURT:  All right.  We talked about parole and

10:10AM   1   supervised release -- I'm sorry, probation and supervised release.

10:10AM   2   If you're given probation and violate it, you will go to jail.  If

10:10AM   3   you're given supervised release and you violate it, you can go to

10:10AM   4   jail.

10:10AM   5           What do I mean by "violating it?"  If you get a

10:10AM   6   probationary sentence or you do some time and then you have

10:10AM   7   supervised release, you're out in the community just like -- you

10:10AM   8   have a bond now, so it's pretty much the same thing, right.  So

10:10AM   9   you're on a bond now.  You have conditions to that bond, right.

10:10AM   10  There's things you can't do.  You can't sell this, right, you

10:10AM   11  can't take out a loan, you can't do drugs, you can't get arrested.

10:10AM   12  It's the same thing, all right; so it's very similar to what

10:10AM   13  you've got now.  Okay?

10:10AM   14          THE DEFENDANT:  Yes.

10:10AM   15          THE COURT:  Restitution.  I think I explained to you the

10:10AM   16  difference between forfeiture and restitution.  You understand the

10:10AM   17  difference; one is the government gets the money, the other one is

10:10AM   18  the victim gets the money.  Do you understand that?

10:10AM   19          THE DEFENDANT:  Yes.

10:10AM   20          THE COURT:  So let me tell you about what a felony

10:10AM   21  conviction, right, other --

10:11AM   22          Counsel, I want to make sure if you're leaving because I

10:11AM   23  have noted on the record that you're here.

10:11AM   24          MR. SABIR:  Yes.  Excuse me.

10:11AM   25          THE COURT:  I'm sorry?

24

10:11AM  1        MR. SABIR:  I have to go outside, Judge, for something.

10:11AM  2        THE COURT:  That's fine.  It's just that I represented on

10:11AM  3  the record that your client -- if the defendant wants to talk to

10:11AM  4  you, you're available.

10:11AM  5        MR. SABIR:  I'm not leaving.

10:11AM  6        THE COURT:  Just if something comes up and you need to

10:11AM  7  talk to him, let me know.  We'll come get him.  He's in the back.

10:11AM  8        MR. KIRLEW:  I think it's best that he stay until you're

10:11AM  9  done with the hearing.

10:11AM  10       THE COURT:  I think it's best too because the defendant

10:11AM  11 has a question and is comfortable asking you, I want you to be

10:11AM  12 here.  You're a member of the bar.  You've represented that you

10:11AM  13 wanted to make an appearance, so I'd rather you stay.  Thank you.

10:11AM  14 I appreciate that.

10:11AM  15       All right.  So there are certain things, sir, certain

10:11AM  16 valuable civil rights that you lose when you have a felony

10:11AM  17 conviction, okay.  You lose your right to vote, you lose your

10:11AM  18 right to hold a public office.  If you have a professional

10:11AM  19 license, sometimes a felony conviction means that you could lose

10:12AM  20 that.

10:12AM  21       And you also lose your right to possess a firearm or

10:12AM  22 ammunition.  Now when I say "possess," I don't mean just own.  You

10:12AM  23 can't own a gun and you can't own ammunition, okay.  You also

10:12AM  24 can't possess it.  What does that mean?  It can't be your friend's

10:12AM  25 gun that's in your car, right.  It can't be that you live in a

10:12AM 1   house and your partner's gun is in your nightstand, right.  You

10:12AM 2   can't be in possession, control of a weapon.  You lose that when

10:12AM 3   you have a felony conviction.  Do you understand that?

10:12AM 4          THE DEFENDANT:  Yes.

10:12AM 5          THE COURT:  And the problem is if you're found to be in

10:12AM 6   possession of a gun or ammunition later, that's a separate charge,

10:12AM 7   right.  You could actually get charged for that.  Everybody else

10:12AM 8   can have a gun and ammunition but you will lose that right once

10:12AM 9   you become a felon, right.

10:12AM 10         If you have a felony conviction both in state and federal

10:12AM 11  law, at least the way the law is right now, you won't be able to

10:12AM 12  have a firearm.  Do you understand that?

10:12AM 13         THE DEFENDANT:  Yes.

10:12AM 14         THE COURT:  All right.  Now, by pleading guilty, of

10:13AM 15  course you take the risk that I'll sentence you to the maximum.

10:13AM 16  And again, I'm not telling you that I will.  I doubt the

10:13AM 17  sentencing guidelines make a recommendation of anywhere near that,

10:13AM 18  okay.

10:13AM 19         But if you're unhappy with my sentence, as long as I

10:13AM 20  don't go above the maximum, you can't get a trial.  You can appeal

10:13AM 21  me, but you can't at the sentencing say "Judge, I don't like how

10:13AM 22  you sentenced me.  Call the jury.  I want a trial instead."  You

10:13AM 23  won't be able to do that.  Do you understand that?

10:13AM 24         THE DEFENDANT:  Yes.

10:13AM 25         THE COURT:  You can't withdraw the plea.

10:13AM   1    All right.  So let's talk about the trial.  We were

10:13AM   2    getting ready to start the trial this morning.  I'm sure you know

10:13AM   3    what rights you had in the trial because we were literally getting

10:13AM   4    ready to walk the jury in, but I want to make sure I go through

10:13AM   5    all those rights with you, that you understand them, and that you

10:13AM   6    realize that you lose that if you plead guilty at the end of the

10:13AM   7    hearing.  Okay.

10:13AM   8    First of all, you have a right to persist in your not

10:13AM   9    guilty plea.  You do not have to plead guilty.  You have a right

10:13AM   10   to your not guilty plea.  You have a right to insist that the

10:14AM   11   government show beyond a reasonable doubt that you committed these

10:14AM   12   offenses, and you're entitled to a unanimous jury.  So you're

10:14AM   13   entitled to jurors of your peers to hear the evidence, and they

10:14AM   14   would have to unanimously find you guilty of these counts.  They

10:14AM   15   don't have to find you guilty of all the counts, right?  There's

10:14AM   16   five counts.  They'd have to make a unanimous finding as to each

10:14AM   17   count separately.  Do you understand that?

10:14AM   18       THE DEFENDANT:  Yes.

10:14AM   19       THE COURT:  So you have the right to a trial by jury.

10:14AM   20   You're presumed innocent, right.  That presumption of innocence

10:14AM   21   follows you all through the trial, and it is the government that

10:14AM   22   has the burden to show that you're guilty beyond a reasonable

10:14AM   23   doubt.

10:14AM   24       Because only the government has the duty and a burden and

10:14AM   25   you have the presumption of innocence, you don't have to do

10:14AM 1  anything at the trial.  You don't have to call witnesses, you
10:14AM 2  don't have to do anything, and you certainly do not have to
10:14AM 3  testify.  Because you're presumed innocent and your right -- not
10:15AM 4  only are you presumed innocent, you also don't have to incriminate
10:15AM 5  yourself because your right not to incriminate yourself and to
10:15AM 6  remain silent persists all through the trial.

10:15AM 7          So we would have had the trial, and you could have
10:15AM 8  testified if you wanted to of course; but if you didn't want to
10:15AM 9  testify, that wouldn't have been held against you.  Do you
10:15AM 10 understand that?

10:15AM 11         THE DEFENDANT:  Yes.

10:15AM 12         THE COURT:  Now, at the trial you would have had Mr.
10:15AM 13 Kirlew.  As I mentioned this morning, your other lawyer, I would
10:15AM 14 have allowed his appearance for the trial, right; so you could
10:15AM 15 have had two lawyers if you wanted to here today.  At the trial
10:15AM 16 those lawyers could have made opening statements for you if they
10:15AM 17 wanted, they could have cross-examined the government's witnesses,
10:15AM 18 they could have challenged the evidence, right, so they could have
10:15AM 19 made motions to me, objections on the evidence, they could have
10:15AM 20 helped you testify if you wanted to testify, they would have made
10:15AM 21 closing arguments.

10:15AM 22         They could actually also ask witnesses to testify, right.
10:16AM 23 They could subpoena witnesses; and if those witnesses didn't show,
10:16AM 24 I'd send the marshals to go get them because you have the right to
10:16AM 25 have witnesses testify on your behalf.

10:16AM   1        Do you understand that those are rights you would have

10:16AM   2   had at the trial?

10:16AM   3        And by the way, they also get to cross-examine those

10:16AM   4   witnesses, right, because you have a right to confront the

10:16AM   5   government's witnesses and the government's evidence.  You would

10:16AM   6   have had all of those rights at a trial.  Do you understand that?

10:16AM   7        THE DEFENDANT:  I have a question for my attorney.

10:16AM   8        THE COURT:  Sure.  Speak to Mr. Kirlew.

10:16AM   9        (Brief pause for the defendant to confer with counsel.)

10:17AM   10        THE DEFENDANT:  I understand, Your Honor.

10:17AM   11        THE COURT:  Let's talk about your appellate rights.  When

10:17AM   12   you go to trial, let's assume a jury would have found you guilty,

10:17AM   13   right, you could appeal that finding of guilt, the jury's finding

10:17AM   14   of guilt.

10:17AM   15        You could also appeal -- let's say I ruled against you on

10:17AM   16   a bunch of different things, you could appeal that; right?  You

10:17AM   17   have a whole trial record to appeal.  When you plead guilty, you

10:17AM   18   can still appeal.  You can appeal my sentence.  You can still file

10:18AM   19   appeals; it's just that there is no trial record.  You're not

10:18AM   20   appealing the finding of guilt, you're not appealing the

10:18AM   21   evidentiary issues because there was no trial.

10:18AM   22        So even though you still have appellate rights, what you

10:18AM   23   can attack on appeal changes because here you're saying "I agree

10:18AM   24   that there is sufficient evidence.  I plead guilty," right.  So

10:18AM   25   there is a slight difference there.  You're not challenging the

10:18AM 1   finding of guilt because you're admitting to that guilt if you

10:18AM 2   decide to plead guilty at the end of this hearing.  Do you

10:18AM 3   understand the difference?

10:18AM 4          THE DEFENDANT:  Yes.

10:18AM 5          THE COURT:  And so you understand that if you plead

10:18AM 6   guilty at the end of this hearing, you're not going to have a

10:18AM 7   trial and all these rights that I just described to you that go

10:18AM 8   along, your right to counsel, your right to confront witnesses,

10:18AM 9   your right to remain silent, your right to testify, your right to

10:18AM 10  be presumed innocent, those are the things that you waive?  Your

10:18AM 11  right to a jury, you've waived that; do you understand?

10:18AM 12         THE DEFENDANT:  Yes.

10:18AM 13         THE COURT:  Now, did you speak to Mr. Kirlew about the

10:18AM 14  U.S. Sentencing Guidelines?

10:18AM 15         THE DEFENDANT:  Yes, I spoke to him.  But could we --

10:18AM 16  could I have a moment with him so we can go over that again?

10:19AM 17         THE COURT:  Yes.  Actually, let me explain to you what I

10:19AM 18  need to explain to you, and then I'll let you talk to him.  Okay?

10:19AM 19         THE DEFENDANT:  Okay.

10:19AM 20         THE COURT:  Because the Sentencing Guidelines -- this is

10:19AM 21  the book.  You probably saw this book in his office because every

10:19AM 22  criminal defense lawyer has this book, right?

10:19AM 23         THE DEFENDANT:  Yes.

10:19AM 24         THE COURT:  And the book in the back has this chart with

10:19AM 25  all these numbers on it, right.  You've seen that?

30

10:19AM  1        THE DEFENDANT:  Yes.

10:19AM  2        THE COURT:  And so what happens with the sentencing

10:19AM  3   guidelines is these five counts, pleading guilty to that count or

10:19AM  4   being found guilty on that count has points, whatever points they

10:19AM  5   are.  At the end we add up those points.  And then, for example,

10:19AM  6   those points, there's different ways to add up points.

10:19AM  7        So for example, in a money case like this one -- this is

10:19AM  8   a financial crime case -- the amount of money, more money, more

10:19AM  9   points.  It's as simple as that, right.  This isn't a conspiracy;

10:20AM 10   but if this were a conspiracy and seven people had been indicted,

10:20AM 11   people who are more culpable get more points; people who have less

10:20AM 12   to do with the conspiracy get less points, okay.

10:20AM 13        When you plead guilty, you're entitled to get less points

10:20AM 14   because you pled guilty.  Sometimes it's two points, sometimes

10:20AM 15   it's three points.  It's not more than that, right?  But we

10:20AM 16   calculate the points.  And then we also look at your criminal

10:20AM 17   history.  So if you have a lot of prior convictions, for example,

10:20AM 18   then that depends -- that guides me to what category I look at.

10:20AM 19        So I'll take all those points, you will get a number.

10:20AM 20   Let's say the number is 15, all right.  So I take the number 15

10:20AM 21   here on the side, the vertical side, and then we will look at your

10:20AM 22   criminal history, which is what comes across.  And then literally

10:20AM 23   it's wherever those two points meet, I will look at numbers.  And

10:20AM 24   these numbers, they're months of incarceration.

10:20AM 25        I take those numbers and I consider them the same way I'm

10:21AM 1   going to consider the nature of the crime.  I'm going to consider

10:21AM 2   a bunch of things; your own history, your own circumstances.  I'm

10:21AM 3   going to try to make sure that the sentence is fair as compared to

10:21AM 4   people who are similarly situated, you know.  I want to make sure

10:21AM 5   the sentence respects the law.  There are a lot of factors I look

10:21AM 6   at; including that big report I talked to you about, the one

10:21AM 7   that's going to tell me what elementary school you went to, I have

10:21AM 8   to read that, and I have to consider everything in there.  At the

10:21AM 9   end of the day I decide what your sentence is.

10:21AM 10          So I use the sentencing guidelines.  I'm required to look

10:21AM 11  at it, and I am required to consider what the guidelines say; I'm

10:21AM 12  not bound by them.  Right.  They're not mandatory.  Do you

10:21AM 13  understand that?

10:21AM 14          THE DEFENDANT:  Yes.

10:21AM 15          THE COURT:  And so probation gives me that

10:21AM 16  recommendation, and that's fine.  The government's going to give

10:21AM 17  me a recommendation, too.  The government is going to tell me

10:21AM 18  "Well, probation is right or probation is wrong.  And, oh, by the

10:22AM 19  way, even if we think the guidelines are this, we think you should

10:22AM 20  sentence him to that."  They get their say at sentencing, but so

10:22AM 21  do you, right.

10:22AM 22          So at sentencing you're going to have read that report,

10:22AM 23  every word of it.  You're going to sit down with your lawyer and

10:22AM 24  have read it.  If you object to things it says, you'll let me

10:22AM 25  know.  I might agree with you.  Sometimes I agree that the report

10:22AM  1    says things or the report concludes things that it shouldn't, and

10:22AM  2    I grant that objection.  But sometimes I disagree with you, and I

10:22AM  3    agree with what the probation report says.  All right.  So at the

10:22AM  4    time of sentencing, if you challenge the probation report, I'll

10:22AM  5    hear it; we'll hear those objections.  I can agree with you or I

10:22AM  6    can disagree with you.

10:22AM  7          But you understand that if I disagree with your

10:22AM  8    calculations because your lawyer will get to tell me what the

10:22AM  9    calculations are.  He may think "Hey, that's the right calculation

10:22AM  10   based on the guidelines, but I still don't think you should

10:22AM  11   sentence him to that you should sentence him to less."  He

10:22AM  12   absolutely can make all those arguments, okay.

10:23AM  13         I will hear all the arguments.  But if I don't agree with

10:23AM  14   the arguments or I sentence you -- I can sentence you above the

10:23AM  15   recommendation.  Probation might say it's X and I might say it's

10:23AM  16   Y.  You understand you can appeal me, but you can't withdraw your

10:23AM  17   guilty plea?  Do you understand that?

10:23AM  18         THE DEFENDANT:  Yes.

10:23AM  19         THE COURT:  All right.  I'll give you a minute to speak

10:23AM  20   to Mr. Kirlew about any other questions that you have about the

10:23AM  21   sentencing guidelines.

10:23AM  22         (Brief pause for the defendant to confer with counsel.)

10:24AM  23         THE COURT:  Government, you should be prepared to address

10:24AM  24   the elements.

10:24AM  25         THE DEFENDANT:  Okay, Your Honor.

10:24AM  1    THE COURT:  Do you have any questions for me about the

10:24AM  2  sentencing guidelines?

10:24AM  3    THE DEFENDANT:  No.

10:24AM  4    THE COURT:  Any more for your lawyer?

10:24AM  5    THE DEFENDANT:  No.

10:25AM  6    THE COURT:  Okay.  There's no plea agreement in this

10:25AM  7  case, obviously, at this point.

10:25AM  8    Let me ask, Mr. Kirlew; did you communicate other plea

10:25AM  9  offers?  I don't know if there was a plea offer in this case.

10:25AM  10    Did you communicate plea offers to him?

10:25AM  11    MR. KIRLEW:  I did, Your Honor, and I advised him that by

10:25AM  12  pleading to the indictment it would not be, obviously, the offer

10:25AM  13  that Mr. Bailyn had extended with certain charges being reduced or

10:25AM  14  the loss amount being capped at a certain number going into it.

10:25AM  15    THE COURT:  So there's no plea agreement in this case.

10:25AM  16  But at some point there had been a plea, and your lawyer says he

10:25AM  17  discussed it with you; is that correct?

10:25AM  18    Don't tell me what the plea was, but did your lawyer talk

10:25AM  19  to you?  Don't tell me what his recommendation was either because

10:25AM  20  I don't want to know what he has told you.  I just want to make

10:25AM  21  sure that you talked about the plea offer that the government

10:25AM  22  gave.

10:25AM  23    THE DEFENDANT:  Yes, we discussed it.

10:25AM  24    THE COURT:  Now, did anybody threaten you in any way to

10:25AM  25  get you to plead guilty this morning?

34

10:25AM   1        THE DEFENDANT:  No.

10:26AM   2        THE COURT:  Did anybody offer you anything to get you to

10:26AM   3   plead guilty this morning?

10:26AM   4        THE DEFENDANT:  No.

10:26AM   5        THE COURT:  Let's go to the elements of the offense.  Let

10:26AM   6   me tell you how in both a trial or even a guilty plea, when the

10:26AM   7   government charges you -- and here there's five charges, right,

10:26AM   8   three are wire and two are the transacting and the money derived

10:26AM   9   from criminal proceeds, right.

10:26AM  10        Let's start with the wire fraud.  The government's

10:26AM  11   evidence has to show that you committed that offense.  They don't

10:26AM  12   get up here and just say "Oh, it's wire fraud," right.  That law

10:26AM  13   requires for you to have done certain things; and unless they can

10:26AM  14   show that you did each one of those things, a jury can't find you

10:26AM  15   guilty, all right.  They can't.  There has to be enough evidence

10:26AM  16   for a jury to have found you guilty beyond a reasonable doubt.

10:26AM  17        When you plead guilty, I have to find, right, that their

10:27AM  18   evidence was sufficient as to each element of every offense;

10:27AM  19   otherwise, I can't accept your guilty plea.  And the way we do

10:27AM  20   that for purposes of a plea is first we go through the elements,

10:27AM  21   right.  What is it the government would have to show for wire

10:27AM  22   fraud?  What is it that they would have to show for the

10:27AM  23   transacting in criminally derived proceeds?  All right.  So first

10:27AM  24   we're going to go through that, and then I am going to hear from

10:27AM  25   them what the evidence would have been to support those charges.

10:27AM 1    Okay.

10:27AM 2            So first let's go through the elements.  Government.

10:27AM 3    What were the elements -- or what are the elements of the wire

10:27AM 4    fraud?

10:27AM 5            MR. BAILYN:  Your Honor, there's four elements to wire

10:27AM 6    fraud in violation of Title 18, Section 1343.

10:27AM 7            First, the defendant knowingly devised or participated in

10:27AM 8    a scheme to defraud someone by using false or fraudulent

10:27AM 9    pretenses, representations, or promises.

10:28AM 10           Second, those false statements were about a material

10:28AM 11   fact.

10:28AM 12           Third, there was an intent to defraud.

10:28AM 13           And fourth, the defendant transmitted or caused to be

10:28AM 14   transmitted by wire some communication in interstate commerce to

10:28AM 15   help carry out that scheme to defraud.

10:28AM 16           THE COURT:  All right.  So that's wire fraud.  Those are

10:28AM 17   four things they have to prove, right.  And they would have to

10:28AM 18   prove them as to each; Count 1, Count 2, and Count 3.

10:28AM 19           Do you understand what the four elements are; the four

10:28AM 20   things the government would have to prove for wire fraud?

10:28AM 21           THE DEFENDANT:  No.  Can you explain it to me?

10:28AM 22           THE COURT:  I'll explain it to you again.  Look, the

10:28AM 23   government's recitation of the elements is correct.

10:28AM 24           It has a lot of legalese to it, so I am going to try to

10:28AM 25   explain it to you without so much of the legalese.  And then,

10:28AM  1   government, you will let me know if I have sufficiently described

10:28AM  2   them.  And, Mr. Kirlew, I'll hear from you if there is any

10:29AM  3   objection.

10:29AM  4        The first thing they have to show is that you knowingly

10:29AM  5   participated or came up with, right, you either had to have

10:29AM  6   created it or participated in some type of scheme to defraud

10:29AM  7   someone, right.  You have to commit some sort of fraud on

10:29AM  8   somebody.  And to do that, that means you made a false statement

10:29AM  9   or made a false promise, right, that you used some sort of false

10:29AM  10  information.  That's the first thing they have to show.

10:29AM  11       Then they have to show that that falsity, right, whatever

10:29AM  12  was false, was material.  What does that mean?  That means it's

10:29AM  13  important.  So if, for example, on an application instead of

10:29AM  14  saying you were born in March, you said February, well, that

10:29AM  15  probably wasn't material, right.  That probably didn't affect the

10:29AM  16  person who was making the decision.  So they have to show that

10:29AM  17  whatever you said that was false had an impact, was material.

10:30AM  18       Then they have to show that that's what you intended to

10:30AM  19  do; that it wasn't a mistake, right.  People make mistakes; that

10:30AM  20  doesn't mean you committed a crime, right.  So they have to show

10:30AM  21  by use of the evidence that what you did was not a mistake; that

10:30AM  22  you intended to defraud, right.

10:30AM  23       And that that fraud involved the use of wires.  What does

10:30AM  24  that mean?  It could mean an email, right?  It could mean a wire

10:30AM  25  transfer in a bank, right.  It has to be some sort of

10:30AM  1   communication that goes across state lines because otherwise it's

10:30AM  2   not a federal case.  It becomes a federal case when the wires are

10:30AM  3   used; modes of communication are used from one state to the other.

10:30AM  4   It can be a phone call, it can be a wire transfer from a bank,

10:30AM  5   right.  It can be anything like that, but it's got to be something

10:30AM  6   that goes from, like, you know, State A to State B; otherwise,

10:31AM  7   it's not a federal offense.

10:31AM  8           So those are the four things they have to show.  Do you

10:31AM  9   understand that?

10:31AM  10          THE DEFENDANT:  Yes.

10:31AM  11          THE COURT:  Government, anything to add to my recitation

10:31AM  12  of them?

10:31AM  13          MR. BAILYN:  No, Your Honor.

10:31AM  14          THE COURT:  I mean, I'm trying to do it in laymen terms

10:31AM  15  that he understands; but I can't be wrong even in laymen's terms.

10:31AM  16  Mr. Kirlew?

10:31AM  17          MR. KIRLEW:  Your Honor, I have no issue with your

10:31AM  18  recitation and description of the offense.

10:31AM  19          THE COURT:  Hold on.  It looks like the government has

10:31AM  20  one thing.

10:31AM  21          MR. BAILYN:  No, and it's not applicable in this case.

10:31AM  22          There is this question in the Eleventh Circuit whether or

10:31AM  23  not the wire actually has to leave the state or if it's sufficient

10:31AM  24  for the wire to be used in a channel of interstate commerce.

10:31AM  25          THE COURT:  It doesn't apply to these facts, right?

10:31AM  1      MR. BAILYN:  No.  That's why when you noticed my face,

10:31AM  2   that was all I was thinking; not applicable.

10:31AM  3      THE COURT:  Look, I don't know the facts the way you all

10:31AM  4   know them, obviously, because I don't have the indictment to look

10:31AM  5   at; but it didn't seem that that would apply.

10:31AM  6      MR. BAILYN:  Not at all.  The way that you described it

10:31AM  7   was perfect.  Thank you.

10:31AM  8      THE COURT:  Okay.  Then let's look at money laundering.

10:31AM  9   That's sort of, like, the casual way of referring to it, we call

10:32AM  10  it money laundering, but the charge wasn't money laundering,

10:32AM  11  right, the charge that's in the indictment.

10:32AM  12      And specifically in the indictment, and I want to be sure

10:32AM  13  that I've got the right terminology, it's engaging in transactions

10:32AM  14  in criminally derived property.  Okay.  That's the charge.  Now,

10:32AM  15  in order for them to have shown that, there are five different

10:32AM  16  things they have to show.

10:32AM  17      I'm going to let the government give you the legal terms.

10:32AM  18  This one is a little easier, right.  If you don't understand that

10:32AM  19  and you need me to explain some of them, I'm happy to do that.

10:32AM  20      THE DEFENDANT:  Thank you.

10:32AM  21      THE COURT:  Government, what are the elements for

10:32AM  22  Counts 4 and 5?

10:32AM  23      MR. BAILYN:  Thank you, Your Honor.  The elements for

10:32AM  24  money laundering, which is engaging in transactions in criminal

10:32AM  25  proceeds, are:

10:32AM   1          First, the defendant knowingly engaged or attempted to

10:32AM   2   engage in a monetary transaction;

10:32AM   3          Second, the defendant knew the transaction involved

10:32AM   4   property or funds that were the proceeds of some criminal

10:33AM   5   activity;

10:33AM   6          Third, the property had a value of more than $10,000;

10:33AM   7          Fourth, the property was, in fact, the proceeds of a

10:33AM   8   specified unlawful activity, in this case wire fraud;

10:33AM   9          And fifth, the transaction took place in the United

10:33AM   10  States.

10:33AM   11         And less legalese, money laundering is taking money from

10:33AM   12  a crime and spending it or moving it.

10:33AM   13         THE COURT:  All right.  Do you understand what the

10:33AM   14  government explained?

10:33AM   15         THE DEFENDANT:  You can explain it.

10:33AM   16         THE COURT:  That's okay.  I'm here for that.  I can

10:33AM   17  explain it.

10:33AM   18         So the first thing they have to show is that you engaged

10:33AM   19  or you tried to engage in a money transaction, right.  A money

10:33AM   20  transaction can be anything; it could be going to the bank, it

10:33AM   21  could be making a deposit, making a withdrawal, lending somebody

10:33AM   22  money, you know, it could be even spending it on a business, any

10:34AM   23  transaction, any movement of money, they have to show that.

10:34AM   24         Then they have to show that that money that you were

10:34AM   25  moving came from a criminal activity, okay.  I know sometimes we

10:34AM  1   think of money laundering, like, we think drug money.  Everybody

10:34AM  2   thinks that's laundering money.  That's not what money laundering

10:34AM  3   is, okay; it's any time you're using that money and the money came

10:34AM  4   from a criminal activity.

10:34AM  5        So if that money was a proceeds, let's say, of a bank

10:34AM  6   fraud, right, you applied for a loan, you defrauded the bank, that

10:34AM  7   money you have now, when you use that money, there forward that

10:34AM  8   money that you have was the product of this wire fraud.  All

10:34AM  9   right.  So when you use that money, then that can be a money

10:34AM  10  laundering charge.

10:34AM  11       It has to be more than $10,000.  The money at issue here,

10:34AM  12  because they have to show that that money you were using and

10:34AM  13  moving came from a crime.  They're saying the crime in this case

10:35AM  14  was the wire fraud, all right.  And then that all has to happen in

10:35AM  15  the United States.  Again, if it doesn't happen in the United

10:35AM  16  States, it can't be charged here, okay.

10:35AM  17       So that's what they would have to show.  Do you

10:35AM  18  understand that?

10:35AM  19            THE DEFENDANT:  Yes.

10:35AM  20            THE COURT:  Does the government have any issue with my

10:35AM  21  laymen's terms of it?

10:35AM  22            MR. BAILYN:  No, Your Honor.

10:35AM  23            THE COURT:  Mr. Kirlew?

10:35AM  24            MR. KIRLEW:  I don't, Your Honor.

10:35AM  25            I just want to point for the record to page 4 of the

10:35AM 1    indictment, which is Count 4 and 5, it states specifically what

10:35AM 2    those money transactions were, which were items of discovery and

10:35AM 3    trial exhibits that Mr. Davis did see and go over with me.

10:35AM 4           THE COURT:  Do you understand that it's page 4 of the

10:35AM 5    indictment?  So Count 4 was based on the July 25, 2023, charge.

10:35AM 6    That was $35,000.  That was the cashier's check.

10:35AM 7           And then there is one for August, 2023, August 1st.

10:35AM 8    That's also a cashier's check of $50,000.  Right.  So purchasing a

10:35AM 9    cashier's check, that's a money transaction and those are the two

10:35AM 10   counts and those are the two activities.

10:36AM 11          Do you see it there, sir?

10:36AM 12          THE DEFENDANT:  Yes, I see it.

10:36AM 13          THE COURT:  So now we know what the government had to

10:36AM 14   prove.  Now, I need to listen to what the government's evidence

10:36AM 15   would have been.  Now, I'm going to ask two things here that are

10:36AM 16   really important.

10:36AM 17          One, I'm going to ask the government to speak really

10:36AM 18   slowly; not only just for your benefit but for mine, okay.  I want

10:36AM 19   them to slowly go through the evidence, okay.  When they're done,

10:36AM 20   I'm going to ask you whether you agree.

10:36AM 21          Now, here is something that's important to understand.

10:36AM 22   They're not going to get up or they don't have to get up and talk

10:36AM 23   about every single piece of evidence that they would have shown

10:36AM 24   this jury for the next three days.  They don't have to do that,

10:36AM 25   okay.  They just have to show me enough or say enough to have met

10:36AM 1    these elements that we just talked about, okay.

10:36AM 2         So they're not going to talk for the next two hours, I

10:36AM 3    promise you.  I would be surprised if they take more than five

10:36AM 4    minutes, okay, because it's a summary of what the evidence would

10:37AM 5    have shown; and that summary has to hit all of these points, okay?

10:37AM 6         THE DEFENDANT:  Okay.

10:37AM 7         THE COURT:  When they're done, I'm going to ask you "Do

10:37AM 8    you agree that what they said is correct?"  If you don't agree,

10:37AM 9    then we'll talk about what you didn't agree with.  Maybe you don't

10:37AM 10   agree with it and maybe the stuff you don't agree with doesn't

10:37AM 11   matter because the evidence is still enough.  Maybe you disagree

10:37AM 12   with something that would be something that would be problematic

10:37AM 13   because I am not going to accept your guilty plea unless you agree

10:37AM 14   to sufficient facts that would have been enough for a jury to have

10:37AM 15   found you guilty because you can't plead as a matter of

10:37AM 16   convenience, right?  I can only accept the plea, if that's what

10:37AM 17   you decide to do when this is all over, if there are enough facts

10:37AM 18   that support a conviction on each count.  Okay?

10:37AM 19        THE DEFENDANT:  Yes.

10:37AM 20        THE COURT:  Do you understand that?

10:37AM 21        THE DEFENDANT:  Yes.

10:37AM 22        THE COURT:  Okay.  Government, you may proceed.

10:37AM 23        MR. BAILYN:  Thank you, Your Honor.  I'll go slowly.  I

10:37AM 24   have been admonished by the court reporter in different ways.

10:37AM 25        THE COURT:  I'm sure you've been admonished by me, too.

10:38AM 1        MR. BAILYN:  That's what I mean.

10:38AM 2        THE COURT:  Yes, correct.

10:38AM 3        MR. BAILYN:  In June and August of 2023 the defendant

10:38AM 4 applied for home equity lines of credit.  I'll refer to these as

10:38AM 5 HELOC, H-E-L-O-C.  These HELOCs were against a property in Miami,

10:38AM 6 Florida.  At trial the government would show evidence of five

10:38AM 7 HELOC applications, and I'll be more specific.

10:38AM 8        On June 6, 2023, the defendant submitted a HELOC

10:39AM 9 application in the approximate amount of $350,000 to U.S. Bank.

10:39AM 10        On June 30, 2023, the defendant submitted a HELOC

10:39AM 11 application to Lower.  That's, like, L-o-w-e-r, LLC, in the

10:39AM 12 approximate amount of $350,000.

10:39AM 13        On July 8, 2023, the defendant submitted a HELOC

10:39AM 14 application to Figure Lending in the approximate amount of

10:39AM 15 $400,000.

10:39AM 16        On July 11, 2023, the defendant represented to Figure

10:40AM 17 Lending that the property that I referenced in Miami, Florida was

10:40AM 18 free and clear of any legal encumbrances, mortgages, or liens.

10:40AM 19 That representation was false.  The property had been encumbered,

10:40AM 20 and the defendant knew that.

10:40AM 21        On July 26, 2023, the defendant represented to Lower LLC

10:40AM 22 that the property had no prior mortgages and that the defendant

10:41AM 23 had not been issued credit by Figure Lending.  Again that

10:41AM 24 representation was false, and the defendant knew that.

10:41AM 25        In fact, the property had prior mortgages; and in fact,

10:41AM  1    the defendant had been issued credit by Figure Lending.

10:41AM  2            The applications that I referenced on June 6th,

10:41AM  3    June 30th, and July 11th of 2023 caused a wire in interstate

10:41AM  4    commerce from the Southern District of Florida to outside the

10:41AM  5    state of Florida.

10:41AM  6            The proceeds of the HELOC applications were deposited

10:41AM  7    into an account at Amerant Bank in the defendant's name.  The

10:41AM  8    account ends in 0406.  Amerant Bank is a financial institution

10:42AM  9    whose accounts are insured by the FDIC.

10:42AM 10            On July 25, 2023, the defendant purchased a cashier's

10:42AM 11    check payable to Boss Group Ministries in the approximate amount

10:42AM 12    of $35,000, which represented the proceeds of criminal activity;

10:42AM 13    specifically, wire fraud.

10:42AM 14            On August 1st, 2023, the defendant purchased a cashier's

10:42AM 15    check in the approximate amount of $50,000, 10,000 of which

10:42AM 16    represented the proceeds of criminal activity.

10:42AM 17            Those transactions took place in Miami, Florida.

10:42AM 18            THE COURT:  And let me ask the government a question.

10:42AM 19            The application to Figure Lending had the false

10:42AM 20    representation that the property was free and clear, correct?

10:42AM 21            MR. BAILYN:  So, Your Honor, yes, both to Figure Lending

10:43AM 22    and as well as to Lower, the defendant made false representations

10:43AM 23    that the property was free and clear.

10:43AM 24            THE COURT:  What was the false representation for the

10:43AM 25    application to U.S. Bank and the application to Lower, LLC?

10:43AM 1      MR. BAILYN:  So for Lower, LLC, Your Honor, it was a

10:43AM 2  representation that the property was free and clear.  So there is

10:43AM 3  the application, there's follow-along questions.

10:43AM 4      What are charged as the counts are the wires for the

10:43AM 5  applications.  In the manner and means we described what's false.

10:43AM 6      And U.S. Bank, and I am concerned the defendant may

10:43AM 7  disagree with this, but there was a submission of false and

10:43AM 8  fraudulent tax returns.  I can be more specific, but I don't think

10:43AM 9  it's necessary for the prima facie case.

10:43AM 10      THE COURT:  It's pled.  I mean, I just want it on the

10:43AM 11  record that that was the plea.  But the government's evidence at

10:44AM 12  trial would be that the false representations that were material

10:44AM 13  that were made with the June 6th application to U.S. Bank, which

10:44AM 14  is a count that he is pleading guilty to, were the false and

10:44AM 15  fraudulent tax returns; correct?

10:44AM 16      MR. BAILYN:  That's correct, Your Honor.

10:44AM 17      THE COURT:  Okay.  All right.

10:44AM 18      MR. KIRLEW:  So, Your Honor, while I agree with Mr.

10:44AM 19  Bailyn's recitation of the facts, there are a couple, I guess,

10:44AM 20  minor disagreements.

10:44AM 21      I believe the one to Figure, which was the one that was

10:44AM 22  first in time, I believe, the one that was first in time, there

10:44AM 23  had not been any encumbrances on the property as far as that

10:44AM 24  misrepresentation.

10:44AM 25      However, as Mr. Bailyn pointed out and I didn't mention

10:44AM  1   it initially, there were other misrepresentations on that

10:44AM  2   application.  The first in time one, I believe, regarding tax

10:44AM  3   returns, income, employment, and things as well.  He didn't

10:44AM  4   mention that initially, but those were on the applications.

10:45AM  5        And those things were all gone through with Mr. Davis,

10:45AM  6   explaining to him that the jury does not have to believe it was

10:45AM  7   necessarily just this false representation; they could say it

10:45AM  8   could be this one, and any one that a juror would find or believe

10:45AM  9   would be sufficient for that juror to make a decision, even if

10:45AM  10  they disagreed on which one, as long as they agreed that there was

10:45AM  11  one made.

10:45AM  12       THE COURT:  Correct.  So there's three different

10:45AM  13  applications, right, and so for each count -- for each wire fraud

10:45AM  14  count there has to be a material misrepresentation.

10:45AM  15       The government's evidence is that as to that first one to

10:45AM  16  U.S. Bank, the false representations were tax returns.

10:45AM  17       Your lawyer says that there were other false

10:45AM  18  misrepresentations.  The government here is saying they would have

10:45AM  19  shown a jury that you submitted false information on these tax

10:45AM  20  returns, and that was the material misrepresentation.

10:45AM  21       And that as to the second and third application, the

10:46AM  22  Lower, LLC, and the Figure Lending, you made representations that

10:46AM  23  the property was free and clear and it was not.  That's the basis

10:46AM  24  for Count 1, Count 2, Count 3.

10:46AM  25       And then you got money from one of those institutions.

10:46AM 1   They're saying that money, right, was wire fraud -- proceeds of a

10:46AM 2   wire fraud.  When you go in and get the cashier's check, that's

10:46AM 3   Count 4, that's money laundering Count 4.  The second cashier's

10:46AM 4   check, that's money laundering Count 5.

10:46AM 5        That's what the government's evidence is.  Do you agree

10:46AM 6   with what the evidence was; what the government just said?

10:46AM 7        THE DEFENDANT:  Let me talk to my lawyer for a couple of

10:46AM 8   seconds.

10:46AM 9        THE COURT:  You can talk to him as long as you want.  I

10:46AM 10  need to hear when you're done with him that you agree that you

10:46AM 11  made a material misrepresentation as to each one of those three

10:46AM 12  because it's three different counts, and that you knew that that

10:46AM 13  money that you got, you shouldn't have gotten it, and then you

10:46AM 14  withdraw the two cashier's checks.

10:47AM 15       So talk to your lawyer for as long as you need.

10:47AM 16       THE DEFENDANT:  Okay.

10:47AM 17       (Brief pause for the defendant confer with his counsel.)

10:50AM 18       MR. KIRLEW:  Judge, just so we're back on the record and

10:50AM 19  the record is clear, I did open up all the loan applications and

10:51AM 20  the government trial exhibits and I went through them with Mr.

10:51AM 21  Davis to show him how each exhibit -- as I mentioned before, the

10:51AM 22  jury is not bound by Mr. Bailyn's recitation, right.  They could

10:51AM 23  look at this exhibit in its entirety and say "Well, I believe this

10:51AM 24  happened," and that would be enough for them to make a decision

10:51AM 25  on.

48

| | |
|---|---|
| 10:51AM | 1 |
| 10:51AM | 2 |
| 10:51AM | 3 |
| 10:51AM | 4 |
| 10:51AM | 5 |
| 10:51AM | 6 |
| 10:51AM | 7 |
| 10:51AM | 8 |
| 10:51AM | 9 |
| 10:51AM | 10 |
| 10:51AM | 11 |
| 10:51AM | 12 |
| 10:51AM | 13 |
| 10:51AM | 14 |
| 10:51AM | 15 |
| 10:52AM | 16 |
| 10:52AM | 17 |
| 10:52AM | 18 |
| 10:52AM | 19 |
| 10:52AM | 20 |
| 10:52AM | 21 |
| 10:52AM | 22 |
| 10:52AM | 23 |
| 10:52AM | 24 |
| 10:52AM | 25 |

THE COURT:  The government has its applications.  They would have submitted that to a jury; and if the application has a material misrepresentation, that would be enough for a jury to find you guilty of wire as to Counts 1, 2, and 3.  It doesn't mean they would; it just means there is enough there that a jury could do that.

So my question to you is, do you agree, sir, that you made a material misrepresentation in each of those three applications?

THE DEFENDANT:  Yes.

THE COURT:  And you withdrew those two amounts from the proceeds that you got from that loan, correct?

THE DEFENDANT:  Yes.

THE COURT:  Is there anything else you disagree with or anything you disagree with from the government's recitation?

THE DEFENDANT:  I just wanted clarification, Your Honor.

THE COURT:  Okay.  So you agree that you did that, sir; is that right?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Kirlew, anything else that's necessary for the record?

MR. KIRLEW:  No, Your Honor.  I believe with my commentary I have made clear that I have gone through that and the elements -- how the elements, I believe, would have been met by the government.

| | |
|---|---|
| 10:52AM | 1 |
| 10:52AM | 2 |
| 10:52AM | 3 |
| 10:52AM | 4 |
| 10:52AM | 5 |

THE COURT:  Well, he's also on the record now said, and correct me if I'm wrong, sir, you agree you made a misrepresentation on the first application, the second application, and the third application; and you agree that you made those two withdrawals, correct?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Government, anything else?  Is that sufficient on the factual proffer?

MR. BAILYN:  I'm sorry, Your Honor.  I didn't understand the question.  Oh, is that sufficient?

THE COURT:  Is it sufficient for the government?

MR. BAILYN:  Yes.  Thank you.

THE COURT:  All right, sir.  So I've looked or I've listened, right, to the government's evidence, I've listened to what you've said and what you have agreed to, and I find that that is sufficient to support a guilty plea to Counts 1, 2, 3, 4, and 5.  That's my finding; that it's sufficient, okay.

Those are all the questions I had for you, okay.  Have you had enough time to think about what you want to do?

THE DEFENDANT:  Yes.

THE COURT:  Have you had enough time to talk to your lawyer about what you want to do?

THE DEFENDANT:  Yes.

THE COURT:  I know that the other lawyer that was going to make an appearance this morning, he's been here during this

10:53AM   1   entire colloquy, do you need to talk to him?  Do you need to ask

10:53AM   2   him anything before we proceed?

10:53AM   3          THE DEFENDANT:  Yes, I'll ask him something.

10:53AM   4          THE COURT:  Go ahead.  He's there; he's available.

10:53AM   5   Counsel.

10:53AM   6          (Brief pause for the defendant to confer with Nashid

10:54AM   7           Sabir.)

10:54AM   8          MR. KIRLEW:  Ready to proceed, Your Honor.

10:54AM   9          THE COURT:  Mr. Kirlew, is there anything that I have

10:54AM   10  omitted that I needed to advise your client?

10:54AM   11         MR. KIRLEW:  No, Your Honor.

10:54AM   12         THE COURT:  Government, have I omitted anything?

10:54AM   13         MR. BAILYN:  No, Your Honor.

10:54AM   14         THE COURT:  If I have --

10:54AM   15         MR. BAILYN:  I'm going through my head of anything that

10:54AM   16  could be said in a plea colloquy and trying to think if there was

10:54AM   17  something, but I think that Your Honor said everything.

10:54AM   18         THE COURT:  Okay.  All right.  Sir, I am going to go

10:54AM   19  through each count now and ask you what your plea is to each

10:54AM   20  count.

10:54AM   21         As to Count 1, wire fraud, how do you plead; guilty or

10:54AM   22  not guilty?

10:54AM   23         THE DEFENDANT:  Guilty.

10:54AM   24         THE COURT:  As to Count 2, wire fraud, do you plead

10:54AM   25  guilty or not guilty?

| | |
|---|---|
| 10:54AM | 1 |

THE DEFENDANT:  Guilty.

THE COURT:  Count 3, wire fraud, is your plea guilty or not guilty?

THE DEFENDANT:  Guilty.

THE COURT:  Your plea as to Count 4, the money transaction count, guilty or not guilty?

THE DEFENDANT:  Guilty.

THE COURT:  And Count 5, guilty or not guilty?  That's the other money transaction.

THE DEFENDANT:  Guilty.

THE COURT:  Mr. Kirlew, are you satisfied that he understands the charges and the consequences?

MR. KIRLEW:  Yes, Your Honor.

THE COURT:  Government, is there any reason I should not accept the plea?

MR. BAILYN:  No, Your Honor.

THE COURT:  All right.  I find the defendant is alert and intelligent.  He's fully competent and capable of entering a plea. He's aware of the nature of the charges and the consequences of the plea.  And I find that his plea is knowing and voluntary, and it is supported by an independent basis in fact, containing each element of the offense.

I also find that he has freely, voluntarily, and intelligently entered this plea with no promises and no threats and without any kind of mental impediment.

10:55AM   1       I find he has had the advice and counsel of a competent
10:55AM   2   lawyer with whom he is satisfied.
10:56AM   3       I accept your plea of guilty as to Counts 1 through 5,
10:56AM   4   and adjudicate you guilty as to Counts 1 through 5.
10:56AM   5       The next step is the preparation of the presentence
10:56AM   6   investigation report that I talked to you about.  Probation is
10:56AM   7   going to reach out to your lawyer -- to Mr. Kirlew and you're
10:56AM   8   going to set up a meeting with them.
10:56AM   9       You don't speak to probation without your lawyer present
10:56AM   10  that's a process.  You have a right to counsel.  You're going to
10:56AM   11  be there with him.  Look, it is really important that you
10:56AM   12  cooperate with probation, right, because the more information I
10:56AM   13  have about you, typically the better, right.  And the information,
10:56AM   14  obviously, has to be accurate, so you want probation to have good
10:56AM   15  information and you want to be truthful, you want to cooperate.
10:56AM   16      That's going to impact also whether I ultimately decide
10:56AM   17  if you're entitled to acceptance of responsibility credit, right?
10:56AM   18      THE DEFENDANT:  Yes.
10:56AM   19      THE COURT:  And so you want to cooperate and obviously be
10:56AM   20  truthful with probation.
10:56AM   21      They're going to give that report back to your lawyer
10:56AM   22  first in draft.  Let's say they got your mother's name wrong
10:57AM   23  because they're going to ask your parents' names, siblings' names,
10:57AM   24  that kind of thing.  Sometimes they make a mistake or sometimes
10:57AM   25  there is an error and your lawyer can talk to them and they fix

10:57AM 1    that; there is no issue.  You will have an opportunity to do that,

10:57AM 2    okay.

10:57AM 3         But sometimes they're like, "No, this is the information

10:57AM 4    we have" or "We have this information from your school" or "We got

10:57AM 5    this information from your mother" or "We got this information

10:57AM 6    from the government and we think it's right," okay, and you

10:57AM 7    disagree.  That's fine.  I'll get the report.  You can file an

10:57AM 8    objection, all right, and then I will listen to that objection at

10:57AM 9    sentencing.  I'll listen to your lawyer, I'm going to listen to

10:57AM 10   the government, and I also will listen to you personally, right.

10:57AM 11   You get the right to address me before I sentence you.

10:57AM 12        At the time of sentencing if there's people who want to

10:57AM 13   support you -- I know there are people here for you today -- they

10:57AM 14   can come to your sentencing.  Your sentencing is a public event,

10:57AM 15   right.  It's an open courthouse.  They can come and be here and

10:58AM 16   support you at sentencing.

10:58AM 17        If they want to say anything to me, there's two ways of

10:58AM 18   doing that.  One way is by submitting a letter.  I'm going to ask

10:58AM 19   that any letters of support be given to your lawyer; not be sent

10:58AM 20   to me directly.  Why?  Because when you send something to me by

10:58AM 21   email and sometimes people find the Court's email, you send it to

10:58AM 22   my email, that's not part of the court record, so there is no

10:58AM 23   record being made, okay.  And if they send it by U.S. mail to the

10:58AM 24   clerk's office even, it may not get here in time, okay, because

10:58AM 25   our mail goes, obviously, through security protocols.  So you want

10:58AM  1   everyone who wants to support you, if they want to do it in

10:58AM  2   writing, let Mr. Kirlew know because then he files those letters

10:58AM  3   in the court record and I read them all.

10:58AM  4        At the time of sentencing if someone wants to speak on

10:58AM  5   your behalf, I will hear from anyone who wants to speak on your

10:58AM  6   behalf.  Okay.  But it also not a free-for-all, so you need to

10:58AM  7   talk to Mr. Kirlew about that so that he knows who is going to

10:59AM  8   speak on your behalf and has an idea of how many people that is so

10:59AM  9   that I can make sure to have enough time for your sentencing,

10:59AM  10  okay.  I don't want to rush people if they want to be heard, if

10:59AM  11  they feel the information they have is information that I should

10:59AM  12  consider before your sentencing, all right.

10:59AM  13       And as I said, at the time of sentencing if the victim in

10:59AM  14  the case, if the banking institutions have a statement they want

10:59AM  15  to make or information, I have to hear them, so I'll hear them,

10:59AM  16  I'll hear from the government, I will hear from your lawyer, and

10:59AM  17  I'll hear from you; and at the end of the day, of course, I make

10:59AM  18  the sentencing decision that I need to make in this case.

10:59AM  19       So I'll refer you pursuant to Rule 32(c)(1) to the office

10:59AM  20  of probation for the preparation of the report.  I'm going to

10:59AM  21  remind your lawyer that when we get the sentencing date from my

10:59AM  22  courtroom deputy, the written order will have deadlines when

10:59AM  23  things are due.  You have to follow the deadlines.  Government, if

10:59AM  24  you need more time, you have to file a motion.  If you don't file

11:00AM  25  a motion, I disregard what you say; simple as that.

| | |
|---|---|
| 11:00AM | 1 |
| 11:00AM | 2 |
| 11:00AM | 3 |
| 11:00AM | 4 |
| 11:00AM | 5 |
| 11:00AM | 6 |
| 11:00AM | 7 |
| 11:00AM | 8 |
| 11:00AM | 9 |
| 11:00AM | 10 |
| 11:00AM | 11 |
| 11:00AM | 12 |
| 11:00AM | 13 |
| 11:00AM | 14 |
| 11:00AM | 15 |
| 11:00AM | 16 |
| 11:00AM | 17 |
| 11:01AM | 18 |
| 11:01AM | 19 |
| 11:01AM | 20 |
| 11:01AM | 21 |
| 11:01AM | 22 |
| 11:01AM | 23 |
| 11:01AM | 24 |
| 11:01AM | 25 |

1    Defense, if you need more time, tell me you need more

2  time.  If you file something at the last minute, I'm not going to

3  disregard it, right, but I may have to continue the sentencing

4  because I want to have time to think things through and to really

5  have an idea of what I think should happen and what the law says,

6  and I want some time to consider that.  I don't like to be rushed

7  at sentencing, so I don't appreciate and I don't like a bunch of

8  last-minute filings because if I see that, two things could

9  happen; either the government could then ask for more time to

10  consider it and I'm going to give it to them, or I may just

11  continue the sentencing because I need more time to consider it.

12    I will give you the time you need.  Look, I'm not going

13  to continue the sentencing for a year; but if you need another

14  week or two or something, like, I will give you that kind of time,

15  I will give your lawyer that kind of time, okay.

16    I don't know if you'll have a term of incarceration; but

17  if you are going to be sentenced to a term of incarceration, you

18  need to be ready to start serving that term of incarceration at

19  the time of your sentencing.  I usually don't give people, like,

20  more time.  If for some reason you need more time, then your

21  lawyer will also have to file a motion.  That's also in my order.

22    Let me hear from the government with respect to bond

23  because now you've pled guilty, and so the standards are

24  different.  Let me hear from the government as to whether or not

25  you should continue to have a bond till the time of sentencing or

56

11:01AM 1    if they're going to make any requests to modify your bond.  Let me

11:01AM 2    hear from the government.

11:01AM 3              MR. BAILYN:  Your Honor, we defer to the Court.  The

11:01AM 4    government has no position and doesn't object to the defendant

11:01AM 5    remaining on pretrial release.

11:01AM 6              THE COURT:  I am going to leave the same bond in place.

11:01AM 7              Now, let me be very clear to you.  From now to the time

11:01AM 8    of sentencing, this is no time to even run over your neighbor's

11:01AM 9    cat, okay?  Not a good idea to start getting involved in anything,

11:01AM 10   okay.

11:01AM 11             THE DEFENDANT:  Right.

11:01AM 12             THE COURT:  Because if you violate any conditions of that

11:01AM 13   bond, and I mean any condition, you stop calling the pretrial

11:02AM 14   services officer, if I hear you violated that bond, I'm just going

11:02AM 15   to have the marshals pick you up and we will be done with the bond

11:02AM 16   conditions.  You've had no issues that I know of on the bond, so

11:02AM 17   it shouldn't be a big deal to you.  But just know that from now to

11:02AM 18   the time of sentencing, I'm looking at your conduct all the way to

11:02AM 19   the day I sentence you.  So you do not want to be in a position,

11:02AM 20   right, where you're going to have a bond violation of any kind.

11:02AM 21             If you're having trouble with the pretrial services

11:02AM 22   officer for some reason or you need your bond to be modified,

11:02AM 23   whatever, talk to Mr. Kirlew, right; but don't go off and do

11:02AM 24   anything on your own or get up too close to that line on the bond

11:02AM 25   because if I hear you violated it, I will revoke it in a minute.

| | | |
|---|---|---|
| 11:02AM | 1 | Okay.  Do you understand that? |
| 11:02AM | 2 | THE DEFENDANT:  Yes. |
| 11:02AM | 3 | THE COURT:  What's the sentencing date, Donna? |
| 11:02AM | 4 | THE COURTROOM DEPUTY:  Judge, it's Thursday, July 24th, |
| 11:02AM | 5 | at 10:00 a.m. |
| 11:02AM | 6 | THE COURT:  All right, is that date fine for the |
| 11:03AM | 7 | government? |
| 11:03AM | 8 | MR. BAILYN:  It's fine, Your Honor. |
| 11:03AM | 9 | THE COURT:  Mr. Kirlew? |
| 11:03AM | 10 | MR. KIRLEW:  Judge, if I may request an afternoon on |
| 11:03AM | 11 | Thursday only because that's probably my busiest day in state |
| 11:03AM | 12 | court is a Thursday morning. |
| 11:03AM | 13 | THE COURT:  Not a problem. |
| 11:03AM | 14 | THE COURTROOM DEPUTY:  We can do 2:00 p.m. |
| 11:03AM | 15 | MR. KIRLEW:  That's fine.  That's much better. |
| 11:03AM | 16 | THE COURT:  And again, Mr. Kirlew, once you get -- it's |
| 11:03AM | 17 | hard for him to know right, once he gets the pretrial services |
| 11:03AM | 18 | report, if you need more time to look at it to object, I will give |
| 11:03AM | 19 | you more time. |
| 11:03AM | 20 | MR. KIRLEW:  Thank you, Judge. |
| 11:03AM | 21 | THE COURT:  Just don't surprise me.  I don't like the |
| 11:03AM | 22 | last-minute stuff as you know probably by now, and I don't like to |
| 11:03AM | 23 | be surprised.  So sentencing is July 24th at 2:00 p.m. |
| 11:03AM | 24 | One other thing that's outstanding then is the motion to |
| 11:03AM | 25 | enter your appearance, counsel.  Do you still want to enter an |

| | |
|---|---|
| 11:03AM | 1 |
| 11:03AM | 2 |
| 11:03AM | 3 |
| 11:03AM | 4 |
| 11:03AM | 5 |
| 11:03AM | 6 |
| 11:03AM | 7 |
| 11:04AM | 8 |
| 11:04AM | 9 |
| 11:04AM | 10 |
| 11:04AM | 11 |
| 11:04AM | 12 |
| 11:04AM | 13 |
| 11:04AM | 14 |
| 11:04AM | 15 |
| 11:04AM | 16 |
| 11:04AM | 17 |
| 11:04AM | 18 |
| 11:04AM | 19 |
| 11:04AM | 20 |
| 11:04AM | 21 |
| 11:04AM | 22 |
| 11:04AM | 23 |
| 11:04AM | 24 |
| 11:04AM | 25 |

appearance for purposes of sentencing, or are you withdrawing your motion to appear?

MR. SABIR:  Judge, do I have to make a decision right now?

THE COURT:  I'm sorry?

MR. SABIR:  Do I have to make a decision right now?

THE COURT:  This is what I am going to do.  I will deny your motion to appear.  I will deny the motion to continue the trial, obviously.  The motion to dismiss the indictment, again, you're not counsel of record, so I'm going to deny that.

If you want to appear, go ahead, file another one.  All right.  That way the record is clean as of today.  Otherwise, it just sits out there, and I don't know when it is that you want me to address it; so you have to talk, obviously, to the defendant about whether he wants you to make an appearance for sentencing. If he wants to do that, refile your motion, and then I'll consider it.  I think that makes for a cleaner record.  Okay?

MR. SABIR:  Thank you, Judge.

THE COURT:  You're also, of course, welcome to be here at the time of sentencing.  You're also welcome in the courthouse. But as a lawyer of record, I'll let you make another motion when you're ready to make it.  Okay?

MR. SABIR:  Yes, Judge.  Thank you.

THE COURT:  Anything else on behalf of the United States?

MR. BAILYN:  No, Your Honor.

59

| | | |
|---|---|---|
| 11:04AM | 1 | There was a motion filed in the last hour.  It appears to |
| 11:04AM | 2 | be a pro se motion; a motion to recuse, alleging conflict of |
| 11:05AM | 3 | interest with the Court. |
| 11:05AM | 4 | THE COURT:  I haven't seen the motion. |
| 11:05AM | 5 | MR. BAILYN:  I just got it on CM/ECF.  Beyond that, there |
| 11:05AM | 6 | are no pending motions. |
| 11:05AM | 7 | THE COURT:  If it's a motion that was filed by anybody |
| 11:05AM | 8 | other than Mr. Kirlew, then I'm going to strike it because the |
| 11:05AM | 9 | local rules are quite clear that only when somebody has a lawyer, |
| 11:05AM | 10 | only the lawyer can file.  In fact, even you, sir, personally |
| 11:05AM | 11 | can't file things.  You have a lawyer; your lawyer has to file |
| 11:05AM | 12 | things.  That's a local rule. |
| 11:05AM | 13 | So I haven't seen it, but there are two other motions |
| 11:05AM | 14 | that were filed earlier or at least one other.  People can't file |
| 11:05AM | 15 | things on the record on your behalf; only your lawyer can.  Okay? |
| 11:05AM | 16 | THE DEFENDANT:  Yes. |
| 11:05AM | 17 | THE COURT:  Do you understand that? |
| 11:05AM | 18 | THE DEFENDANT:  Yes. |
| 11:05AM | 19 | THE COURT:  Okay.  Anything else on behalf of the United |
| 11:05AM | 20 | States? |
| 11:05AM | 21 | MR. BAILYN:  No, Your Honor.  Thank you. |
| 11:05AM | 22 | THE COURT:  Anything else, Mr. Kirlew? |
| 11:05AM | 23 | MR. KIRLEW:  No, Judge. |
| 11:05AM | 24 | THE COURT:  Sir, do you have any questions for me or |
| 11:05AM | 25 | anything else? |

11:05AM   1          THE DEFENDANT:  No, Your Honor.

11:05AM   2          THE COURT:  All right.  We'll see you at sentencing.

11:05AM   3   Thank you.

11:05AM   4          (Proceedings recessed at 11:05 a.m.)

          5                    C E R T I F I C A T E

          6          I hereby certify that the foregoing is an accurate

          7   transcription of the proceedings in the above-entitled matter.

          8

          9

         10   DATE:  8/11/25          /s/Vernita Allen-Williams
                                      VERNITA ALLEN-WILLIAMS, RMR, FCRR
         11                           Official Court Reporter
                                      United States District Court
         12                           Southern District of Florida
                                      400 North Miami Avenue
         13                           Miami, Florida 33128
                                      (305) 523-5938

         14

         15

         16

         17

         18

         19

         20

         21

         22

         23

         24

         25